DARR v FIRST FEDERAL SAVINGS & LOAN ASSOCIATION
OF DETROIT

Docket No. 71078. Submitted March 21, 1984, at Detroit.—Decided
October 22, 1985. Leave to appeal granted, 424 Mich 861.

Richard E. and Nancy Jo Darr purchased a house in 1977 with
funds loaned to them by First Federal Savings and Loan
Association of Detroit. The loan was secured by a mortgage on
the property. In 1979 the Darrs sold the property to J. Law-
rence and Kathleen A. Moisan on land contract without First
Federal's permission. First Federal, upon learning of the land
contract transaction, notified the Darrs that the balance of
their loan was due and payable within 30 days pursuant to the
due-on-sale clause contained in the mortgage. First Federal also
indicated that it would agree not to accelerate the balance if
the Darrs would agree to pay a higher interest rate. The Darrs
declined First Federal's offer to accept a higher interest rate
and continued to submit monthly payments to First Federal as
required by the mortgage. First Federal rejected the payments
and instituted foreclosure proceedings. The Darrs and the
Moisans filed suit against First Federal in Wayne Circuit Court
seeking declaratory and injunctive relief, arguing that enforce-
ment of the due-on-sale clause constituted an unreasonable
restraint on alienation of the property and that sale of mort-
gaged realty on land contract terms constituted a permissible
exception under the due-on-sale clause because it created a lien
or encumbrance subordinate to the mortgage. Plaintiffs subse-
quently abandoned their unreasonable restraint on alienation
claim. Defendant filed a motion for summary judgment on the
ground that plaintiffs had failed to state a claim upon which
relief could be granted. The court, James E. Mies, J., denied the
motion, finding that the land contract sale did create a lien or
encumbrance subordinate to the mortgage, thereby clearly
being excepted from operation of the due-on-sale clause of the
mortgage. Judgment was entered in favor of plaintiffs. Defen-
dant appealed. *Held:*

The land contract sale involved in this case created a lien or

REFERENCES FOR POINTS IN HEADNOTE
Am Jur 2d, Vendor and Purchaser §§ 198 *et seq.*
See the annotations in the ALR3d/4th Quick Index under Mort-
gages § 4.

encumbrance subordinate to the mortgage within the meaning of the standard mortgage agreement signed by the Darrs and First Federal. The sale comes within the exception, therefore the due-on-sale clause does not apply.

Affirmed.

MORTGAGES — DUE ON SALE CLAUSES — LAND CONTRACTS.

A land contract sale of mortgaged property may serve to create a lien or encumbrance subordinate to the mortgage and bring the sale within an exception to a due-on-sale clause in the mortgage which excepts the application of the clause to sales or transfers which create a lien or encumbrance subordinate to the mortgage.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Owen J. Cummings*), for plaintiffs.

*Clark, Klein & Beaumont* (by *David M. Hayes* and *Thomas S. Nowinski*), for defendant.

Amici Curiae:

Federal Home Loan Mortgage Corporation (by *Maud Mater,* Vice President and General Counsel, *Gary S. Smuckler,* Deputy General Counsel, and *Garrett C. Burke,* Associate General Counsel).

Federal Home Loan Bank Board (by *Ralph W. Christy,* Deputy General Counsel, *Harvey Simon,* Associate General Counsel, and *John E. Gunther,* Deputy Director, Litigation Division).

Before: R. M. MAHER, P.J., and D. E. HOLBROOK, JR., and S. J. LATREILLE,* JJ.

PER CURIAM. Defendant, First Federal Savings and Loan Association of Detroit, appeals as of right from a judgment of the Wayne County Circuit Court entered in April, 1983, which enjoined it from foreclosing on certain property. First Fed-

* Circuit judge, sitting on the Court of Appeals by assignment.

eral's position was that foreclosure was authorized because the mortgagors had defaulted by not paying the balance of the loan after they had sold the property on land contract without defendant's permission, thereby triggering a mortgage "due-on-sale" clause.

Plaintiffs Richard E. Darr and Nancy Jo Darr executed a mortgage in 1977 to defendant First Federal, which loaned them $31,000 to purchase residential property in Redford Township. In 1979, the Darrs sold the property on land contract to plaintiffs J. Lawrence and Kathleen A. Moisan. Thereafter, First Federal notified the Darrs that the balance of the loan was due and payable within 30 days pursuant to the due-on-sale clause contained in the mortgage. It is this mortgage clause, and an exception contained therein, which is the focus of this appeal.

The mortgage which the Darrs executed in December, 1977, was on a uniform form devised by the Federal Home Loan Mortgage Corporation (FHLMC). It contained the following provision:

"17. Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the

sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.

"If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof."

The Darrs entered into a land contract with the Moisans in 1979. The sale price was $52,500, with a $21,903.22 down payment and $30,596.78 owing. The $30,596.78 (the same amount the Darrs owed defendant) was to be paid to the Darrs, with interest at 8.75% and monthly payments of $252.57 in principal and interest; the balance was to be fully paid within five years. A clause of the land contract recited that the purpose was to give the purchasers additional time to assume the mortgage balance:

"(k) The purpose of this Land Contract is to provide the purchaser additional time to assume the mortgage balance held by First Federal Savings & Loan Assoc., in the approximate amount of $30,596.78, with interest at the rate of 8.75% annum and which has present monthly payments of approx. $328.00, if he should so desire."

Defendant's consent to the land contract sale was not sought.

On April 4, 1980, defendant notified plaintiffs by certified mail that it was exercising the due-on-sale

clause and the loan balance was due and payable within 30 days. It indicated it would agree not to accelerate the balance if the plaintiffs would agree to pay a higher interest rate. Plaintiffs refused and continued to submit monthly payments to defendant as required by the mortgage, but defendant rejected the payments. Defendant subsequently instituted foreclosure proceedings.

Plaintiffs filed an action for declaratory relief and sought a permanent injunction from foreclosure in U.S. District Court. The case was consolidated with 22 other cases concerning the same issue. On September 15, 1980, the case was dismissed by the Honorable Ralph B. Guy for lack of subject matter jurisdiction. 500 F Supp 1147 (1980). Judge Guy found plaintiffs' claim was a matter of state contract law.

On March 9, 1981, one day before the sheriff's foreclosure sale of the property was scheduled, plaintiffs filed this suit in Wayne County Circuit Court. Plaintiffs sought declaratory and injunctive relief based on two theories: (1) enforcement of the due-on-sale clause constituted an unreasonable restraint on alienation of the property and (2) sale of the mortgaged realty on land contract terms constituted a permissible exception under section (a) of paragraph 17, the due-on-sale provision, because it created a "lien or encumbrance subordinate to [the] mortgage". Following the U.S. Supreme Court decision in *Fidelity Federal Savings & Loan Ass'n v de la Cuesta,* 458 US 141; 102 S Ct 3014; 73 L Ed 2d 664 (1982), plaintiffs abandoned their restraint on alienation claim.

In October, 1982, defendant filed a motion for summary judgment under GCR 1963, 117.2(1) on the basis that plaintiffs' complaint failed to state a claim on which relief could be granted. A hearing on the motion for summary judgment was con-

ducted on November 19, 1982, before Judge James E. Mies. Following argument, the lower court announced it would deny defendant's motion for summary judgment because the land contract sale did create a lien or encumbrance subordinate to the mortgage, thereby clearly excepting the land contract transaction from operation of the due-on-sale clause of the mortgage. The court stated:

"I think admittedly we have a sale. I think that unquestionably it cannot be argued successfully that a sale on a land contract of the property is not in fact a sale; it is. However, paragraph seventeen speaks of a sale. If we look at the language, it says if all or any part of the property or an interest therein is sold or transferred by the buyer without the lender's prior written consent, excluding—so, we start out, by the very language of paragraph seventeen, dealing with a sale. And we exclude A, the creation of a lien or encumbrance not subordinate, strike that—lien or encumbrance subordinate to this mortgage.

"There isn't any doubt in my mind, but what in fact the land contract is a lien or encumbrance. No question about that, in my judgment. There isn't any question but what it is subordinate in fact to this mortgage.

"And, it's the Court's opinion that the plain language of paragraph seventeen seems to exclude the kind of factual situation we have here; from the due on sale clause. If we don't have that, if it's not a plain exclusion, and at the very best from the Defendants' point of view it's ambiguous language.

"And, because the provision is susceptible to conflicting interpretation, it has to be construed against the lender who is charged with the drafting. They may be voicing the drafting off onto some other agency, but nonetheless they're stuck with that language.

\* \* \*

"And that the Court is satisfied, that at best this provision is subject to conflicting interpretation. And, I am going to therefore deny the Defendant's Motion for Summary Judgment. It has to be construed against the

lenders. It seems to me that if they want to enforce it, it has to be reasonably certain, and if it's certain at all, it's certain in a way contrary to the position of the Defendant."

In announcing its decision, the lower court discussed, and distinguished, the case of *Smith v Frontier Federal Savings & Loan Ass'n,* 649 P2d 536 (Okla, 1982), one of only two reported cases nationwide where the precise issue posed had been considered:

"Of more persuasion, however, the Defendants have cited to the Court an Oklahoma Supreme Court case of *Smith versus Frontier Federal Savings and Loan Association,* which was decided on July 27, 1982, and is that Court's number 56724. It is a very similar factual situation; however, there is one factual difference that the Court finds to be significant. Page 1 of that Court's opinion, they say, and I'm quoting, the contract provided for the Smiths to be paid for their equity in the property, and for Valentine to assume the Smiths monthly payments to Frontier Federal.

"That's different than what we have in this case. In this case, there has been no change in the payments; they are still made by the vendor, directly to First Federal. The land contract vendee is making it's payments to the vendor, and in the contract there is no assumption of the mortgage, and I think that that is a distinguishing factor between the Oklahoma case, and the facts we have in the case before us."

In January, 1983, defendant moved for rehearing, arguing that the present case was indistinguishable from *Smith.* A hearing on defendant's motion for rehearing was held on March 4, 1983. The motion was denied.

The parties agreed that a judgment would then be entered rather than going to trial so that defendant could proceed with an appeal to this Court and because there was no real dispute as to

the facts. Judgment was entered on April 12, 1983. Defendant filed a claim of appeal to this Court.

An amicus curiae brief has been filed by the Federal Home Loan Bank Board and Federal Home Loan Mortgage Corporation in support of defendant's position.

On appeal, we must determine whether or not the land contract sale involved in this case created a "lien or encumbrance subordinate to the mortgage" within the meaning of Paragraph 17 of the standard mortgage agreement signed by the Darrs and First Federal Savings & Loan Association of Detroit. Defendant and amici curiae argue that it does not because the execution of a land contract transfers title in the property rather than merely creating a lien or encumbrance. The trial court recognized that a sale had occurred but concluded that, nevertheless, the land contract was a lien or encumbrance. We agree with the trial court. Michigan expansively defines the terms "lien" and "encumbrance":

"An incumbrance is anything which constitutes a burden upon the title, such as a right-of-way, a condition which may work a forfeiture of the estate, a right to take off timber, or a right of dower. *Post v Campau,* 42 Mich 90; 3 NW 272 (1879)."

*Madhavan v Sucher,* 105 Mich App 284, 288; 306 NW2d 481 (1981). Furthermore, as noted by the trial court, the language of Paragraph 17 suggests that there must be a least one situation in which the mortgagor could sell the property without activating the due-on-sale clause because an exclusion exists. Finally. even assuming that defendant's view of this language is the preferable one, the clause is, at best, ambiguous. The trial court therefore correctly construed the terms against the

drafter. *Lichnovsky v Ziebart International Corp,* 414 Mich 228; 324 NW2d 732 (1982).

Defendant has called this Court's attention to a number of opinions by other jurisdictions which have reached the opposite result when construing the language of Paragraph 17. However, we find that several of these cases, particularly *Smith v Frontier Federal Savings & Loan Ass'n, supra,* and *First Federal Savings & Loan Ass'n of Rapid City v Wick,* 322 NW2d 860 (SD, 1982), are distinguishable on their facts. Unlike the land contract in *Smith,* the land contract in this case specifically served to create an interim device to allow the vendees time to assume the mortgage, rather than as the instrument creating the assumption. The analysis in *Wick,* in turn, was at least in part dependent upon a South Dakota statutory provision which stated that a lien does not transfer title to property. In addition, none of the more recent cases cited by defendants, *Williams v First Federal Savings & Loan Ass'n of Arlington,* 651 F2d 910 (CA 4, 1981); *New Home Federal Savings & Loan Ass'n v Trunk,* 333 PA Super 393; 482 A2d 625 (1984); *Freedom Savings & Loan Ass'n, Inc v La-Monte,* 448 So 2d 51 (Fla App, 1984); *Greater Louisville First Federal Savings & Loan Ass'n v Etzler,* 659 SW2d 209 (Ky App, 1983); *First Federal Savings & Loan Ass'n of Fort Myers v Fox,* 440 So 2d 652 (Fla App, 1983), and *First Federal Savings & Loan Ass'n of Englewood v Lockwood,* 385 So 2d 156 (Fla App, 1980), have addressed the possibility of there being an exclusion from a sale. We believe that this possibility favors affirmance of the decision of the trial court. Finally, at least one commentator has recognized the possibility of a land contract sale being, in effect, "junior financing" by the home owner:

*"Junior Financing of Houses by Owners.* An individual selling his mortgaged home will generally seek a buyer who can pay cash or refinance the sale through a commercial lender. This permits the seller to pay off his mortgage and realize his equity in the property. If this cannot be arranged the seller will seek a buyer who can pay off the seller's equity in cash and take subject to the existing mortgage. This is less desirable for the seller because he remains liable on the mortgage. Many home owners cannot sell their homes under either of these plans. *The only available buyers may lack sufficient cash either to make the down payment necessary to qualify for refinancing or to buy the sellers' equity. In order to sell the property, the seller may be forced to leave his mortgage outstanding and sell to a buyer using a land contract as a junior lien.* The seller is in effect financing the difference between his asking price and the buyer's down payment plus the amount of the mortgage indebtedness. The installment payments are applied first to the mortgage with any excess going to the seller. This permits the seller to gradually realize his equity in cash." Power, *Land Contracts as Security Devices,* 12 Wayne L Rev 391, 404-405 (1966). (Emphasis added, footnotes omitted.)

Defendant and amici curiae admit that the exclusion in Paragraph 17 was intended to apply to "junior financing". For these reasons, we affirm the decision of the trial court.

Affirmed.